MOEEL LAH FAKHOURY LLP
Hanni M. Fakhoury (State Bar No. 252629)
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone:   (510) 500-9994
Email:          hanni@mlf-llp.com

Attorneys for Demaurija Collins

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | Case No.: 4:20-CR-00447-HSG |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE** |
| v. | |
| DEMAURIJA COLLINS, | **Court:** Courtroom 2, 4th Floor |
| Defendant. | **Hearing Date:** July 28, 2021 |
| | **Hearing Time:** 10:00 a.m. |

**INTRODUCTION**

No one would envy the life Mr. Collins has lived. Abandoned by his mother, abused by his caretakers, and turning to alcohol to numb the pain, Mr. Collins's chaotic and traumatic upbringing predictably steered him to where he is today, awaiting sentencing in a federal criminal case, incarcerated at the height of a global pandemic to make the situation somehow worse.

Given these circumstances, he asks this Court to grant a downward variance in this case and sentence him to 24 months in the custody of the Bureau of Prisons ("BOP"), three years of supervised release and a $100 special assessment. He also asks this Court to recommend the BOP allow him to participate in its Residential Drug Abuse Program ("RDAP").

**STATEMENT OF FACTS**

A.  **Mr. Collins's History and Characteristics.**

Mr. Collins was born in Oakland in 1991. Presentence Investigation Report ("PSR") ¶ 61. He has never met his father. He was placed in foster care when he was three years old, cared for by an older cousin and her boyfriend who were physically and emotionally abusive. PSR ¶ 62. He was hit by shoes and cords and even held down so he could be physically hit. *Id.* He also witnessed domestic violence in the house. He did not have enough to eat and had a difficult time in school. *Id.* When he was 11, he was removed from his cousin's home and eventually placed in group homes. *Id.* Mr. Collins was not well, and he was ultimately admitted into a psychiatric hospital for two days after he threatened to kill himself. PSR ¶ 63. He eventually went to live with another cousin, before residing in two more group homes near Sacramento.

When he was 17 years old, he returned to Oakland after he learned his mother wanted to reunite with him. PSR ¶ 64. He went to a shelter to stay with his mother but after a few days, she left him at the shelter. *Id.* They have had sporadic contact since. PSR ¶ 61.

Once he became an adult, Mr. Collins was effectively homeless, living on the streets or couch surfing. PSR¶ 64. He turned to alcohol to cope, drinking cognac all day, and used marijuana to "calm his nerves." PSR ¶ 72. Without a high school diploma, job training or any employment history, Mr. Collins turned to crime to survive. He has prior cases for petty theft of deodorant, body spray and razors, PSR ¶ 29, stealing from a CVS, PSR ¶ 31, shoplifting razor blades and shampoo from a

Walgreens, PSR ¶ 33, breaking into a T-Mobile store, PSR ¶ 34, and burglarizing a Walgreens. PSR ¶ 35. He has been arrested—but not charged or convicted—for theft and shoplifting crimes on six prior occasions. *See* PSR ¶¶ 42, 47, 50, 54, 55, 58.

Throughout this time, Mr. Collins was surrounded by violence. In addition to the physical violence he suffered as a child, he has himself been the victim of gun violence, PSR ¶ 69, and as a result suffers from Post-Traumatic Stress Disorder ("PTSD"), anxiety and insomnia. PSR ¶ 70. Mr. Collins regularly has nightmares about being hurt or killed. *Id.* As he writes in his letter to the Court, "being from the area I'm from and having my background as a young inner city youth" and the fact that he "endured unwarranted and unattended physical abuse from the same people the government….deemed worth to have guardianship over me," he developed a "[inferiority] complex to safety and trust" and was "paranoid…that another individual could shoot me at any moment." *See* Exhibit A, Letter of Demaurija Collins.

**B.     The Nature and Circumstances of the Offense and Court Proceedings.**

On August 18, 2020, Highway Patrol officers pulled Mr. Collins over for a traffic violation. PSR ¶ 6. They discovered he had an outstanding warrant and arrested him. PSR ¶ 7. An inventory search of the car uncovered a handgun in the center console of the car. PSR ¶ 8. Mr. Collins was booked and released from local custody. On August 31, 2020, a federal criminal complaint was filed charging Mr. Collins with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). *See* Dkt. 1. A federal no bail bench warrant also issued.

On October 11, 2020, Mr. Collins was arrested in Arizona on state charges, as well as on the federal no bail bench warrant. The state dismissed its charges on October 21, 2020, and Mr. Collins made an initial appearance in the District of Arizona the following day and was ordered removed to the Northern District of California in custody. PSR ¶¶ 4, 43. He made his initial appearance in the Northern District on November 30, 2020 and waived his right to a detention hearing on December 29, 2020. He has been in custody since his arrest on October 11, 2020. PSR ¶ 4.

A one count federal indictment charging Mr. Collins with being a felon in possession of a firearm was filed on December 1, 2020, and Mr. Collins entered a guilty plea to the indictment on May 12, 2021, after agreeing on the terms of a plea agreement with the government. PSR ¶ 3.

### C. Mr. Collins's Future Goals and Plans

Mr. Collins accepts responsibility for his mistake, writing he made "a conscious decision" to go "down an unrighteous path" built "on the notion it's better to have it and not need it, than to need it and not have it." Exh. A. He is "clearly…in much regret" and wants "to seek help for my personal issues" so he can "be a productive father for my son," and ensure his son does not "become another inner-city statistic such as myself." *Id.* He will likely need a halfway house placement upon release from the BOP, as well as alcohol and mental health counseling and treatment. PSR ¶¶ 66, 70, 73.

### SENTENCING ARGUMENT

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 52 (2007) (quotations omitted). The factors detailed in 18 U.S.C. § 3553(a) assist the Court in fulfilling this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). The sentence recommended in the U.S. Sentencing Guidelines ("U.S.S.G.") is only one factor for district courts to consider in making this judgment, and it may not be weighed more heavily than any other § 3553(a) factor. *Gall*, 552 U.S. at 50; *see also United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).

Mr. Collins respectfully requests this Court grant him a downward variance and sentence him to 24 months in the custody of the BOP, three years of supervised release and a $100 special assessment.

### A. Seriousness of the Offense, Respect for the Law and Just Punishment.

The Supreme Court has explained the factors in § 3553(a)(2)(A)—the seriousness of the offense," the need "to promote respect for the law" and "provide just punishment for the offense"— are the sentencing rationale of "retribution." *See Tapia v. United States*, 564 U.S. 319, 326 (2011) ("a court may not take account of retribution (the first purpose listed in 3553(a)(2)) when imposing a term of supervised release") (emphasis omitted). "The goal of retribution" is the "interest[] in seeing

that the offender is repaid for the hurt he caused." *Kennedy v. Louisiana*, 554 U.S. 407, 442 (2008). Yet, the Supreme Court has warned "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (quotations omitted).

A 24-month sentence would be the longest sentence Mr. Collins has ever served in custody, and the first time he will actually go to prison. He has only received one prior "paper" prison commitment of 16 months, served with half time credits in the county jail. PSR ¶ 32. A 24-month sentence thus reflects a significant increase—more than double accounting for good time credits awarded by the BOP—from his longest previous custodial sentence.

Moreover, a 24-month sentence also accounts for the "real conduct and circumstances" in this case, including Mr. Collins's "unstable upbringing," PSR ¶ 100, and lengthy struggle with PTSD and alcoholism, which played a significant role in bringing him before the Court for sentencing.

Trauma during childhood creates higher risks for negative outcomes in life, including health and life opportunities.[1] Supportive and nurturing relationships and environments for children and families are at the "heart of prevention" for children with trauma history. *Id.* Mr. Collins certainly did not have that kind of childhood. He was abandoned by his mother, abused by the relatives who were supposed to take care of him in her absence, and raised in rough and tumble group and foster homes, until he had to fend for himself on the streets, using alcohol as a crutch to get through the day.

It is unsurprising that Mr. Collins has found himself incarcerated. There can be no question that Mr. Collins's depression and PTSD, caused by his traumatic past and exacerbated by alcoholism, contributed to his poor judgment in this case. As told to the *New York Times*, "in a justice system built upon the idea of choice and personal responsibility, experts say the path to trouble may begin long before an individual has any say in the matter. What happens to people in childhood can make a difference in whether they end up in a prison cell, or whether they are even wired to make rational

---

[1] *See* Rhitu Chatterjee, "CDC: Childhood Trauma is a Public Health Issue and We Can Do More to Prevent It," *National Public Radio*, Nov., 2019, https://www.npr.org/sections/health-shots/2019/11/05/776550377/cdc-childhood-trauma-is-a-public-health-issue-and-we-can-do-more-prevent-it.

decisions."[2] It is often repeated by prosecutors that childhood trauma is not an excuse for an adult's behavior, dismissing years of neglect inflicted upon a helpless child because a grown man has had plenty of time to decide what type of adult he should be. However, childhood trauma does not have an expiration date. Indeed, as one Cornell University sociologist told the *New York Times,* trauma is a major factor "that shapes addictive and criminal behavior in adulthood" and is a "huge factor within the criminal justice system."[3] As a doctor with the Centers for Disease Control elaborated, "children's adverse experiences are a public health problem" as "childhood adversity and stress can chemically change the way our brains work."[4]

Living in a group home likely contributed to that adversity. Group care is often considered a "placement of last resort," especially for young children.[5] "Concerns are manifold [in group care]. Group care is very costly with limited scientific evidence for its effectiveness. . . . Concerns revolve around reliance on shift staff with often inadequate training and higher turnover rates, issues of safety and potential for abuse as well as negative peer processes."[6]

Thus, Mr. Collins's childhood trauma shaped his adulthood and continues to impact him every day of his life. While Mr. Collins accepts responsibility for the mistakes that he alone caused, any sentence must take his childhood adversity into account.

A 24-month sentence is also justified by the fact that being in jail has been, and will continue to be, significantly more difficult due to the COVID-19 pandemic. COVID-19 has wreaked havoc in prisons and jails across the country including both the Santa Rita jail and the BOP, where Mr. Collins will serve any prison sentence imposed by the Court. One study has found that the COVID-19 confirmed case rate in prison is 3.7 times higher than the national rate, and the death rate was two

---

[2] *See* Audra Burch, "A Gun to His Head as a Child. In Prison as an Adult." *New York Times*, Oct. 15, 2017, https://www.nytimes.com/2017/10/15/us/childhood-trauma-prison-addiction.html.

[3] *Id.*

[4] *Id*.

[5] *See* Sigrid James, "What Works in Group Care?—A Structured Review of Treatment Models for Group Homes and Residential Care," CHILDREN AND YOUTH SERVICES REVIEW 33, 308-321 (2011), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3314708/.

[6] *Id.*

times the number expected given mortality among individuals of a similar age, gender, and race.[7] In an effort to control the spread of the disease, both Santa Rita and the BOP have held inmates under lockdown conditions similar to solitary confinement and restricted physical visits. Because COVID-19 has made the time Mr. Collins has served—and will continue to serve—more severe than it would be otherwise, a variance from the Guideline range is warranted.

### B.    Deterring Criminal Conduct and Protecting the Public.

A 24-month sentence will deter Mr. Collins from possessing a firearm again. Mr. Collins accepts he made a mistake that requires punishment, but the time he has spent in custody—under more restrictive conditions during a pandemic—has been enough to deter him from picking up a firearm again. As for protecting the public, getting Mr. Collins on supervised release and into intensive alcohol and mental health treatment sooner rather than later will be more effective at protecting the public than a prison sentence longer than 24 months.

### C.    Providing Training, Medical Care or Other Treatment.

"The underlying purposes of sentencing include not only punishment and deterrence, but also the provision of treatment to a defendant in need of it." *United States v. Bad Marriage*, 392 F.3d 1103, 1114 (9th Cir. 2004) (citing 18 U.S.C. § 3553(a)(2)(D)). Congress has cautioned courts to recognize that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). Indeed, the Supreme Court has explained a district court cannot increase the length of a sentence to provide a defendant with rehabilitative services, and a court determining the length of a prison sentence "should consider the specified rationales of punishment *except for* rehabilitation, which it should acknowledge as an unsuitable justification for a prison term." *Tapia*, 564 U.S. at 327 (emphasis in original).

Mr. Collins has PTSD and depression. PSR ¶ 70. He has abused alcohol since he was 10 years old and will need alcohol and mental health counseling. PSR ¶¶ 70, 72-73. Mr. Collins plans to participate in the treatment programs available to him in the BOP, but the harder and more necessary

---

[7] *See* National Commission on COVID-19 and Criminal Justice, "COVID-19 in U.S. State and Federal Prisons, December 2020 Update," at 3, *available at* https://cdn.ymaws.com/counciloncj.org/resource/resmgr/covid_commission/COVID-19_in_State_and_Federa.pdf.

treatment for Mr. Collins will come when he is out of custody. That is why "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000) (citing 18 U.S.C. § 3553(a)(2)(D)). Thus, placing Mr. Collins onto supervised release after 24 months—and into mental health counseling and drug treatment—will be more effective at ensuring he is not a danger to the public than a longer prison sentence.

### D. The Guidelines Sentencing Range.

Mr. Collins agrees with the Guideline calculations in the PSR and plea agreement. The base offense level is 14 under U.S.S.G. § 2K2.1(a)(6)(A) because he is prohibited from possessing a firearm due to his prior felony convictions. PSR ¶ 14. Because the firearm was stolen—something Mr. Collins had nothing to do with—another two levels are added under U.S.S.G. § 2K2.1(b)(4)(A). PSR ¶ 15. Because Mr. Collins pleaded guilty, a three-level downward adjustment for acceptance of responsibility applies under U.S.S.G. §§ 3E1.1(a) and (b). PSR ¶ 21-22. The adjusted offense level is therefore 13. PSR ¶ 23. Mr. Collins is in criminal history category VI. PSR ¶ 38. So, the advisory Guideline range is 33-41 months. PSR ¶ 80.

But this Guideline range only accounts for the aggravating factors in Mr. Collins's case. The range says nothing about Mr. Collins's chaotic upbringing, struggle with alcoholism and mental illness, or the pandemic, which has made his time in custody harder than it would have been otherwise. As suggested by the probation office, the fact Mr. Collins "has never had a stable residence or parental figure," "lived with numerous relatives and in group homes, all before he turned 17 years old," "suffered physical abuse at the hands on his first primary caretaker, "began abusing alcohol at age 10 years old" and was abandoned by his mother a few days after reuniting with her when he was 17 years old, are reasons to impose a sentence outside the Guidelines. PSR ¶ 97.

### E. Avoiding Unwarranted Sentencing Disparities.

While the Court must avoid unwarranted sentencing disparities among defendants with similar records convicted of similar conduct, the Ninth Circuit has explained sentencing courts must also "avoid 'unwarranted similarities among [defendants] who were not similarly situated.'" *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009) (quoting *Gall,* 552 U.S. at 55 (emphasis

and brackets in original)); *see also* 18 U.S.C. § 3553(a)(6).

    A 24-month sentence ensures Mr. Collins is not equated with a defendant who has a prior conviction for a crime of violence or drug trafficking offense, possessed, brandished, or discharged a firearm during a crime of violence or drug trafficking offense, or possessed a more aggravated firearm, like a machine gun or a firearm with a high-capacity magazine. Such a sentence also accounts for Mr. Collins's chaotic upbringing, alcoholism, and mental health struggles. Finally, a 24-month sentence ensures Mr. Collins is not equated to a defendant going through the federal criminal justice system *before* the pandemic, when there was greater movement and programming opportunities in custody, and no possibility of catching a once in a century life-threatening illness while incarcerated.

## CONCLUSION

    Mr. Collins respectfully requests this Court sentence him to 24 months in custody, three years of supervised release and a $100 special assessment. He also asks this Court to recommend the BOP allow him to participate in RDAP.

Dated:   July 21, 2021                            Respectfully submitted,

                                                                MOEEL LAH FAKHOURY LLP

                                                                Hanni M. Fakhoury
                                                               Attorneys for Demaurija Collins